J-A13031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROBERT A. HUNT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PENNY ANN HUNT | : | No. 841 MDA 2022 |

Appeal from the Order Entered February 9, 2022
In the Court of Common Pleas of York County Civil Division at No(s):
2012-FC-001816-15

| | | |
|---|---|---|
| ROBERT A. HUNT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PENNY ANN HUNT | : | No. 842 MDA 2022 |

Appeal from the Decree Entered May 9, 2022
In the Court of Common Pleas of York County Civil Division at No(s):
2012-FC-001816-02

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED OCTOBER 18, 2023**

Husband, Robert A. Hunt, appeals from the final decree entered in the

Court of Common Pleas of York County divorcing Husband and Wife, Penny

Ann Hunt, and resolving all outstanding economic issues between them.

_____

[*] Former Justice specially assigned to the Superior Court.

Herein, Husband challenges the trial court's alimony and equitable distribution awards as adopted in the May 9, 2022, decree. We affirm.

The trial court provides an apt statement of facts and procedural history, as follows:

A Complaint in Divorce was filed on October 13, 2012. The parties separated on May 12, 2012. A Divorce Master, Robert A. Kulling, was appointed on June 29, 2017, to address the issue of interim relief and on September 5, 2018, to address claims for equitable distribution, alimony, counsel fees, and costs and expenses. A prehearing Conference was held on October 1, 2018. On November 5, 2018, a Settlement Conference was conducted, but the parties were unable to reach an agreement. This matter was eventually assigned to [the trial court]. Hearings were conducted before [the trial court] on January 9, 2019, April 26, 2019, August 22, 2019, February 28, 2020, October 15, 2020, and November 19, 2020. Numerous Status Conference Hearings and Contempt/Special Hearings were held in addition to these hearings. On September 21, 2021, the [trial court] issued a Final Order on Divorce and Economic Issues.

Stipulated findings of fact indicated that Husband and Wife were married on June 17, 1996, and separated on May 12, 2012. The parties were married for fifteen years and eleven months. This was Husband's first marriage and Wife's second marriage. The parties have no children together.

The [trial court] made the following findings of fact regarding Husband's income and potential to earn.

1. Husband currently pays $1[,]796.38 in support payments. The support payments are set to expire as Husband has paid $98,793.13 out of the $105,421.22 owed to Wife.

2. Husband also pays $359.28 per month in arrears ("arrears payments"). Husband owes over $100,000 in arrears payments.

3. Husband is currently employed as an Independent Contractor/business analyst with Kodiak systems. He has worked with this company since 2017. Prior to his current employment, he was the President of CRA collections from 2007-2016, and he worked for UPS for 8 years. Husband also had several other business dealings which were depleted during the marriage.

4. Husband has an Associate's Degree in Business.

5. Husband's 2019 Kodiak salary was $163,360.00. In 2018, Husband's Kodiak salary was $170,136.96. [N.T., 2/28/2020, at 201.] Husband's salary was consistently higher in prior few years.

6. Husband sought to lower his salary and hid assets. See N.T. 1/9/2012, at 35-36.

7. Husband has received items such as $100,000 sports cars, a Ferrari worth $180,000, trips to Super Bowl on a private jet in lieu of a higher salary, and at least $100,000 as cash bonuses. N.T. at 50-51; *see also* N.T., 4/26/2019, at 11-12.

8. Husband has monthly expenses of $10,312.00.

9. Husband has consistently lived at [a] high standard of living and above his means despite separation.

10. In accordance with the findings above, Husband's annual gross salary is at a minimum above $200,000.

Final Am. Order, 2/9/2022, at 2-3.

Regarding Husband's salary, the [trial court] noted that "[t]estimony was provided that Husband received a Ferrari, other sports cars, cash bonuses, and other trips in lieu of salary. This indicate[d] that his salary [wa]s probably higher than indicated." Id. at n1. In noting that Husband lives at a high standard of living and above his means despite separation, the [trial court]noted that this included "[s]ports cars, racing, expensive trips, and etc. **See** N.T., 10/15/2020, at 133-137." **Id**. at n2.

The [trial court] made the following findings of fact regarding Wife's income and potential to earn.

1. Wife is currently employed as a Commercial Underwriter at Farmers First Insurance Company where she has been employed for nine years.

2. Wife's 2019 salary was $70,047.00.

3. Wife has monthly expenses of $4,089.95.

4. Wife is currently in breast cancer remission and has fragile health.

5. Wife's annual gross salary is 72,721.44.  See Wife's Ex. 170.

6. Prior to separation, Wife consistently lived at a high standard of living.

7. Wife has been unable to sustain the prior standard of living and her medical expenses have greatly depleted her resources and her primary source of income.

8. At the time of the last hearing, Wife was receiving temporary support payments which is almost depleted.

9. In addition to support payments, Wife is currently owed over $100,000 in arrears payments from Husband.

*Id.* at 3-4.

On October 1, 2021, Husband filed a Motion for Reconsideration.  On October 14, 2021, Wife filed a Motion for Reconsideration.  On February 8, 2022, a hearing on cross-motions for reconsideration was held.  As a result, on February 9, 2022, the final order was amended regarding the payment plan on page twenty-three and the requirement to purchase life insurance on page

twenty-four. On May 9, 2022, a divorce decree was entered. On June 6, 2022, Husband filed a Notice of Appeal and a Concise Statement of Matters Complained of on Appeal.

Husband raises in his appellate brief the following Statement of Questions Presented for this Court's consideration:

1. Did the trial court err in its reasoning and analysis of the award of alimony to Wife?

2. Did the trial court err in its calculation of the value of marital assets by assigning two separate values to the marital home, to the detriment of Husband?

3. Did the trial court err in ordering that Husband's non-marital property, a personal injury settlement, should be attached as part of the divorce process and distributed to Wife before the entry of the divorce decree, and prior to the date of a final order?

4. Did the trial court err in ordering funds contained in escrow and held by Wife's counsel to be distributed to Wife prior to the entry of a divorce decree, prior to the date of a final order?

5. Did the trial court improperly fail to consider the inordinate length of the litigation in this case, as well as the lengthy separation of the parties, during which time Husband paid support to Wife, as a factor in the case when creating its final order for equitable distribution and alimony?

6. Did the trial court improperly weight evidence from Husband's ex-girlfriend in making key evidentiary determinations in the case?

7. Did the trial court improperly consider a higher than actual sale value of several marital assets, including the Gettysburg painting and the Nissan Acura?

Brief of Appellant, at 9-10.

Husband first assails the trial court's alimony award. Our standard of review for challenges to alimony awards is whether the trial court abused its discretion. *See Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa. Super. 2004). When examining whether an abuse of discretion has occurred, we examine:

> not whether the trial court has merely committed an error of judgment, but rather whether the trial court has overridden or misapplied the law, or has exercised judgment which is manifestly unreasonable, or the product of partiality, prejudice, bias or ill-will as demonstrated by the evidence of record.

*Lawson v. Lawson*, 940 A.2d 444, 447 (Pa. Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (internal brackets omitted).

> [T]he purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a **secondary remedy** and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.

*Gates v. Gates*, 933 A.2d 102, 106 (Pa. Super. 2007) (cleaned up; emphasis in original).

The Divorce Code provides the following guidance in relation to an award of alimony:

**(a)General rule.--**Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary.

**(b) Factors relevant.--**In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors, including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

**(c) Duration.--**The court in ordering alimony shall determine the duration of the order, which may be for a definite or an indefinite period of time which is reasonable under the circumstances.

**(d) Statement of reasons.--**In an order made under this section, the court shall set forth the reason for its denial or award of alimony and the amount thereof.

**(e) Modification and termination.--**An order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made. Any further order shall apply only to payments accruing subsequent to the petition

for the requested relief. Remarriage of the party receiving alimony shall terminate the award of alimony.

**(f) Status of agreement to pay alimony.--**Whenever the court approves an agreement for the payment of alimony voluntarily entered into between the parties, the agreement shall constitute the order of the court and may be enforced as provided in section 3703 (relating to enforcement of arrearages).

23 Pa.C.S. § 3701.

In this issue, Husband questions both the amount and the duration of the alimony award, and he challenges the court's application of several of the seventeen factors set forth in 23 Pa.C.S.A. § 3701(b) that a court must weigh in considering whether to award alimony. Specifically, Husband argues first that economic justice required the court to consider the "exceedingly large amount of support that he had already paid to Wife during the separation of the parties over a nine-year period ($77,098.48)" as well as what he describes as "the excessive amount of arrears which were past due and would continue to be collected by Wife into the future ($108,134.00 in arrears past due). Our jurisprudence, he maintains, typically applies "indefinite alimony" only when the length of the marriage is "much longer than the fifteen years between the parties in this case." Brief for Appellant, at 29.

Husband further argues that the court failed to analyze the "reasonable needs of the parties" and relied, instead, on what he contends was a superficial determination of the parties' respective incomes and his ability to pay alimony, thus making the court's application of the guideline amount erroneous.

Wife responds that the trial court reasonably concluded that manifest economic justice could not be reached absent an alimony award to her. She maintains that even though she receives 70 percent of the marital estate, the alimony award does not reflect an abuse of judicial discretion when one considers her poor health stemming from a 2017 Stage-4 breast cancer diagnosis and continuing treatment, her comparatively older age, a sizeable income disparity favoring Husband, and Husband's marital misconduct with finances leading to a depleted marital estate at the time of equitable distribution. *See* Section 3701(3, 4, and 14, *supra*).

The trial court substantiates its award of alimony with extensive, record-supported findings of fact regarding Husband's and Wife's respective incomes and potentials to earn, the valuation of items and designation of them as marital and nonmarital, *See* TCO, 2/9/22, at p.2-17. At the time of the order, the court explains, wife was in poor health and unable to pursue additional training or assume an increased workload. This finding of fact, coupled with the court's determination that her receipt of 70% of a marital estate that was dissipated unreasonably by Husband's financial misconduct, led the court to conclude that it would be for an indefinite time that "Wife will be unable to meet her reasonable needs." Pa.R.A.P. 1925(a) Opinion, 8/2/22, at 7-8.

As such, the trial court concludes that it complied with Section 3701(c) when it ordered alimony to be for an indefinite time and modifiable with changing circumstances because it was reasonable to do so under the circumstances. *See* Section 3701(c) (permitting indefinite duration to

- 10 -

alimony order where reasonable). We agree, as our independent review confirms that the court's determinations and conclusions are supported by the certified record. Therefore, we affirm on this issue based on the analysis supplied by the trial court in both its initial Opinion in support of its "Amended Final Order on Divorce Economic Issues", 2/9/2022 and its Pa.R.A.P. 1925(a) Opinion.

In Husband's second issue, he maintains that the trial court erred in its calculation of the value of marital assets by assigning two separate values to the marital home, to the detriment of Husband. In reviewing the lower court's decision to adopt the divorce master's valuation, we are mindful of the following:

> "[T]he Divorce Code does not set forth a specific method or valuing assets, and consistent with our standard of review, the trial court is afforded great discretion in fashioning an equitable distribution order which achieves economic justice." **Carney** [**v. Carney**,] 167 A.3d [127,] 131 [(Pa. Super. 2017)] (citation omitted). "In valuing marital assets, the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties." **Id.** (quotation marks, brackets, and citation omitted). However, "[t]he trial court may accept all, part, or none of the evidence regarding valuation of marital property, and it may rely on its own valuation method." **Brubaker** [**v. Brubaker**], 201 A.3d [180,] 185 [(Pa. Super. 2018)].

**Llaurado v. Garcia-Zapata**, 223 A.3d 247, 254 (Pa. Super. 2019).

The two values referenced by Husband are the $410,000.00[1] purchase price Husband agreed to pay after discussion with the trial court and the $435,000 value the court chose in forming its equitable distribution order. The trial court explained that it counseled Husband to make the $410,000 purchase for the sake of paying off both the mortgage and arrears on the mortgage and realizing an equity remainder which could be distributed between Husband and Wife. **R.R. 1381a**. Of further concern to the trial court was that third party offers may be below market value because a foreclosure was pending. N.T., 2/9/22, at 8.

The trial court opines that it chose the latter value, which is approximately 6% higher than Husband's agreed-upon purchase price, because it believed the urgency of the "forced sale" may have been at a below-value purchase price, and Wife's professional appraisal was considerably higher. As the trial court's valuation method relied upon extensive discussions of market values, third-party offers, and appraisals, and reached a final amount considerably closer to Husband's purchase price than to Wife's professional appraisal amount, we discern no abuse of the trial court's exercise of discretion.

In Husband's third and fourth issues, he maintains the court erred in ordering that his personal injury settlement acquired post-separation should

---

[1] A third party had made a purchase offer of $400,000, albeit with a contingency that seller pay one-half the realtor's 6% commission. RR 2587a, 7-18.

be attached as part of the divorce property and distributed to Wife prior to the entry of a divorce decree. Under the definitions of 23 Pa.C.S. § 3501(a)(8)[2] and relevant caselaw, Husband asserts, funds received from a settlement for a cause of action arising after the date of separation are not marital assets. *See Dudas v. Pietrzykowski*, 849 A.2d 582 (Pa. 2004).

The trial court, however, explains that it acted under its enforcement authority conferred by 23 Pa.C.S. § 3502(e), which empowers a court to enforce equitable distribution by use of a party's real and personal property. Specifically, Section 3502(e) provides:

> If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:
>
> (1) Enter judgment;

_____

[2] Section 3501(a)(8) of the Domestic Relations statute provides:

> **(a) General rule.--**As used in this chapter, **"marital property"** means all property acquired by either party during the marriage and the increase in value of any nonmarital property acquired pursuant to paragraphs (1) and (3) as measured and determined under subsection (a.1). However, marital property does not include:
>
> **(8)** Any payment received as a result of an award or settlement for any cause of action or claim which accrued prior to the marriage or after the date of final separation regardless of when the payment was received.

23 Pa.C.S.A. § 3501(a)(8).

(2) Authorize the taking and seizure of the goods and chattels and intangible property of the party;

23 Pa.C.S. § 3502(e).

In its Rule 1925 Opinion, the trial court sets forth the circumstances that compelled it to act under Section 3502(e):

"Given that the bulk of the marital assets [we]re either in Husband's possession or were dissipated by Husband's actions," the [trial court] ordered that "the remaining amount owed to Wife was to [be] paid first from Husband's personal injury escrow funds . . . ." Final Am. Order at 23. The [trial court] was within its enforcement authority and did not err in ordering the distribution of Husband's post-separation settlement.

Rule 1925(a) Opinion, at 11.

On this point, Husband does not dispute that the trial court has powers to enforce an order of equitable distribution, and baldly claims that the trial court abused its discretion in taking the entire amount of the settlement. The court, however, clarified that it applied the settlement assets to the remaining amount owed to Wife, a fact that Husband does not contest. Therefore, this claim affords Husband no relief.

In Husband's fifth issue, he contends that the trial court improperly failed to consider the spousal support Husband paid to Wife for nine years when it entered its final order for equitable distribution and alimony.

When determining the propriety of an equitable distribution award, this Court must consider the distribution scheme as a whole. *Mundy v. Mundy*, 151 A.3d 230, 236 (Pa. Super. 2016). "We do not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall

application of the 23 Pa.C.S.[ ] § 3502(a) factors[3] for consideration in awarding equitable distribution. If we fail to find an abuse of discretion, the order must stand." ***Harvey v. Harvey***,

---

[3] **(a) General rule.--**Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:

(1) The length of the marriage.
(2) Any prior marriage of either party.
(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.
(4) The contribution by one party to the education, training or increased earning power of the other party.
(5) The opportunity of each party for future acquisitions of capital assets and income.
(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.
(8) The value of the property set apart to each party.
(9) The standard of living of the parties established during the marriage.
(10) The economic circumstances of each party at the time the division of property is to become effective.
(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.
(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.
(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502.

167 A.3d 6, 17 (Pa. Super. 2017) (citation and internal brackets omitted). Finally, "it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." *Brubaker*, 201 A.3d at 184 (citation omitted).

. . .

"A trial court has broad discretion when fashioning an award of equitable distribution." *Brubaker*, 201 A.3d at 184 (citation omitted). "In making its decision **\*524** regarding equitable distribution, the trial court must consider at least the eleven factors enumerated in 23 Pa.C.S.[ ] § 3502(a)." *Isralsky v. Isralsky*, 824 A.2d 1178, 1191 (Pa. Super. 2003). However, there is no standard formula guiding the division of marital property and the "method of distribution derives from the facts of the individual case." *Wang v. Feng*, 888 A.2d 882, 888 (Pa. Super. 2005) (citation omitted). While the list of factors in Section 3502 serves as a guideline for consideration, the list is "neither exhaustive nor specific as to the weight to be given the various factors." *Id.* (citation omitted). Accordingly, "the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions." *Id.* (citation omitted).

*Hess v. Hess*, 212 A.3d 520, 523-24 (Pa. Super. 2019)

To support his position, Husband relies on *DeMarco v. DeMarco*, 787 A.2d 1072 (Pa. Super. 2001), in which this Court deemed inequitable an order awarding alimony for twenty years where the facts established that the parties had been married just 12 years and were separated for the ensuing 17 years, the entire time for which an order of support was in effect.

Similarly, he offers *Teodorski v Teodorski*, 857 A.2d 194 (Pa. Super. 2004) for the proposition that the denial of permanent alimony is appropriate where the marriage at issue was relatively brief—six years in *Teodorski*—and the paying spouse already had paid support for nearly an equal amount of time—nearly 5 years. *Id.* at 199, 201.

Husband concedes the facts of his case are distinguishable from each of the cited cases, as he has "paid support for nine years on a marriage that lasted just under 16 years." Brief for Appellant at 45. He argues, however, that continuing spousal support after Husband has already paid over $100,000 as well as legal fees for Wife, who has worked full time during the separation, is similarly inequitable to the cited authority. To this end, Appellant contends that the trial court failed to consider Husband's contributions and, consequently, effected an economic injustice through its equitable distribution scheme and support award.

The trial court rejects Husband's argument in full. Referencing the Section 3502(a) factors, the Court notes:

> The [trial court] considered all eleven . . . factors before making its equitable distribution determination. The [trial court] did not fail to consider the length of the litigation and separation in this case when creating its final order for equitable distribution and alimony. In fact, while analyzing the alimony factors, the [trial court] considered that "Husband was less than forthcoming and his lack [of] cooperation in the early proceedings contributed to delays and the depletion of some assets [] relative to furnishings in the marital home, other vehicles, and cash. Said actions thus deprived Wife of monies/property that she could claim in equitable distribution." Final Am. Order at 30. At the hearing on motion for reconsideration, Husband admitted to having delayed the proceedings by paus[ing] litigation for a few years further lengthening the separation. Tr., Feb. 9, 2022, at 10. The [trial court] also considered under the duration of marriage factor that Husband had been paying around $1,800 per month since May 2018 through the Domestic Relations Office. Final Am. Order at 26. The [trial court] noted "[this will factor into the duration and Husband's ability to pay paired with the standard of living during this marriage. However, otherwise this factor is neutral." *Id.* at 26.

Pa.R.A.P. 1925(a) Opinion, at 12-13. As the record supports the trial court's declaration that it considered the length of both the parties' litigation before it and their separation relative to the length of their marriage, we agree with the trial court that Husband's claim is without merit.

Husband next posits that the trial court erroneously made credibility determinations in favor of Husband's ex-girlfriend, Elizabeth Varnish, without reliable evidence to support her claims. Ms. Varnish testified, *inter alia*, that Husband accepted, in lieu of salary, $100,000.00 sports cars, a Ferrari worth $180,000.00, and cash bonuses of at least $100,000.00, without requiring any proof of such assertions. For example, he maintains, no Department of Motor Vehicles records of ownership were ever introduced during the hearings. Brief of Appellant, at 48. Instead, Ms. Varnish related on the stand simply that Husband had told her so. N.T., 1/9/19, at 50.

To support his appeal for reversal, Husband cites to **Morgante v. Morgante**, 119 A.3d 382, 395 (Pa. Super. 2015), in which there existed a controversy over whether a ring was marital property. The wife had offered an extra-judicial statement that the ring was, in fact, marital property, but only the Husband provided testimony about the ring, denying that it was marital property. The trial court relied on the wife's out-of-court statement to find the ring was marital property, but we reversed on appeal, observing, "Here, given the lack of Wife's testimony regarding the ring, the Master's acceptance of Wife's position as credible and determinative of ownership is

not supported by the record. Consequently, the trial court's reliance on the Master's credibility determination is not supported." *Id.* 119 A.3d at 395.

*Morgante* is inapposite to the present matter, as Ms. Varnish, unlike the wife in *Morgante*, did, in fact, testify before the court about the facts presently in dispute, and the court, considering her long-time close relationship with Husband, reasonably found her testimony credible.[4] Therefore, Husband's claim fails.

In Husband's final issue, he contends the trial court erroneously assigned inflated, higher-than-actual-sale value for several marital assets. The first is an oil on canvas painting entitled, "Lions of the Round Top –

_____

[4] We note that the trial court applied Rule 1925 waiver to Husband's claim, as it concluded the enumerated matter complained of, which stated, "The [trial court] improperly considered evidence from Husband's ex-girlfriend in making key evidentiary determination in this case.", was not raised with sufficient specificity to enable the court to identify what evidence was at issue.

It is well-settled that "any issues not raised in a [Rule] 1925(b) statement will be deemed waived." *Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005) (citation and quotation omitted).  We will also deem a claim waived if the Rule 1925(b) statement is so vague that it fails to provide adequate guidance to the trial court regarding the issue on appeal. *See* Pa.R.A.P. 1925(b)(4)(ii) ("The [1925(b)] Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue be raised for the judge"). A Rule 1925(b) Statement "which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [Rule 1925(b)] Statement at all." *Lineberger v. Wyeth*, 894 A.2d 141, 148 (Pa. Super. 2006).

While we do not disagree with the trial court's assessment that Husband's Rule 1925 statement lacked specificity with respect to this issue, we have elected to review and dismiss the issue on its merits.

- 19 -

Gettysburg", by Don Troiani. The trial court valued this work at $40,000, opining,

> There was some dispute as to whether this painting was a gift to Husband and therefore nonmarital or whether it was given in lieu of salary or debt and therefore was marital property. N.T., 10/15/2020, at 166-67. The [trial court] notes that throughout this case there was testimony by various parties that Husband received cash bonuses, exotic cars, trips, and other lavish items in lieu of salary. Accordingly, [the trial court] accepts Wife's testimony that this painting was owned by the parties prior to separation and is marital property rather than nonmarital. N.T., 4/26/19, at 208. Husband sold the painting for $25,000 without Wife's knowledge in 2013. N.T., 2/28/20, at 181. However, this painting was appraised for a value at $40,000 and the [trial court] accepts this value. N.T., 4/26/19, at 111-12.

Rule 1925(a) Opinion, at 14.

Husband argues that Wife testified that the value of the painting was $40,000.00, which, Husband maintains was based on hearsay. However, as Husband fails to develop a meaningful argument, supported by citation to supporting authority, in opposition to the trial court's valuation rationale, this issue waived. *See C.H.L. v. W.D.L.*, 214 A.3d 1272, 1276 (Pa. Super. 2019) (stating that "[i]t is well-established that the failure to develop an argument with citation to, and analysis of, pertinent authority results in waiver of that issue on appeal"); Pa.R.A.P. 2119(b).

Next, Appellant contends that no evidence of record was presented establishing that the Chevrolet DS truck was a marital asset. In fact, Husband asserts, his ex-girlfriend Ms. Varnish testified that she gave Husband the truck after he had supplied her with purchase money for it two years post-

- 20 -

separation, in 2013. N.T.,1/9/19, at 59. Despite this testimony, Husband continues, the trial court found that the truck was a marital asset and placed an equitable distribution value on it of $10,000. Because this argument is outside the scope of the Rule 1925(b) concise statement at issue, which asserted that the trial court overvalued certain marital assets, the trial court does not address it. Accordingly, we decline to review this argument. **See Commonwealth v. Hill**, 16 A.3d 484, 494 (Pa. 2011) (Any issues not raised in accordance with Rule 1925(b) will be deemed waived. Rule 1925 is a bright-line rule.).

The same result attends Husband's contention under this final issue that the trial court erred in assigning certain value to uncollectable loans as part of equitable distribution. This matter was not specified in Husband's Rule 1925(b) statement, such that the trial court's comprehensive Rule 1925(a) opinion does not address it. As this consequence impedes our ability to conduct meaningful review of the claim, we find this part of his final issue waived as well.

With respect to the Nissan Acura NSX race car, which was identified in Husband's Rule 1925(b) statement, Husband concedes the car was a marital asset but argues that extensive required repairs and a mechanic's lien, which covered the costs of the repairs and storage of the car amounting to $38,000.00 in costs significantly reduced the car's value before the parties separated in 2010. N.T., 2/28/20, at 48; Husband's Exhibit, Receipt, 12/15/16. Therefore, Husband contends that his contributions to maintain

the marital asset should have affected the equitable distribution calculation in his favor, in the interests of economic justice. *Anthony v. Anthony*, 514 A.2d 91, 94-95 (Pa. Super. 1986).

Wife counters that testimony established that the Acura NSX was a valuable asset at the date of separation. N.T., 4/26/19, at 192, with a valuation range between $27,600 and $39,000 in 2012. Wife's Exhibit 206, p. 8. Testimony was offered that Husband went to the auto repair shop, with whom he enjoyed a friendly relationship, and advised that he did not want the vehicle because he was separating from his wife. N.T. at 218. Despite the subsequent mechanic's lien and storage fees, Husband still exercised a degree of control over the vehicle, as testified to by his ex-girlfriend Ms. Varnish. According to Ms. Varnish, she saw the Acura NSX in the shop of Husband's friend on a date after which the car was supposedly lost to a mechanic's lien sale. N.T., 1/9/19, at 39.

On this evidence, the trial court concluded that Husband executed the mechanic's lien and engaged in related actions afterward in a manner that was, "at the very least" a negligent if not an intentional undertaking to hide the asset from Wife. Rule 1925(a) Opinion, at 14. As there is record support for the court's credibility determination in this regard, we deny Husband's claim.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/18/2023

# OFFICE OF THE PROTHONOTARY
## York County

**Allison Blew**
Prothonotary
**Billie Jo Bones**
Chief Deputy
**Gregory E. Gettle, Esq.**
Solicitor



York County Judicial Center
45 N. George Street
York, PA 17401
Office: (717) 771-9611
Passports: (717) 771-4760

## FAX TRANSMITTAL

**DATE:** __02/09/22__

**FROM:** **PROTHONOTARY'S OFFICE**   **LOCATION:** YORK CO JUDICIAL CENTER

**TO:**                              **LOCATION:**

**PENNY V AYERS, ESQ**                **717-741-1469**

**Notice of Entry of Order, Decree or Judgment in accordance with PA R. C. P. 236**

**CASE NUMBER**   __2012-FC-001816-15__

**NUMBER OF PAGES INCLUDING COVER SHEET:**   __34__   **pages**

**ANY PROBLEMS WITH TRANSMITTAL PLEASE CALL  (717) 771-9611 AND ASK FOR DENISE.**

Confidentiality Notice: This facsimile, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender at the phone number listed above and destroy all copies of the original message.

RECEIVED
YORK COUNTY PROTHONOTARY

2022 FEB -9 PM 12: 20

JUDICIAL CENTER YORK PA

## IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT A. HUNT,** | : | No. 2012-FC-001816-15 |
| Plaintiff | : | |
| vs. | : | |
| | : | |
| **PENNY HUNT,** | : | **ACTION IN DIVORCE** |
| Defendant | : | |

## AMENDED FINAL ORDER ON DIVORCE ECONOMIC ISSUES

### PROCEDURAL BACKGROUND

A Complaint in Divorce was filed on October 13, 2012. The parties separated on May 12, 2012. A Divorce Master, Robert A. Kulling, was appointed on June 29, 2017 to address the issue of interim relief. On September 5, 2018, Divorce Master, Robert A. Kulling, Esquire was appointed to address claims for equitable distribution, alimony, counsel fees, and costs and expenses. A Prehearing Conference was held on October 1, 2018. On November 5, 2018, a Settlement Conference was conducted but the parties were unable to reach an agreement. This matter was eventually assigned to this Honorable Court. Hearings were conducted before this Court on January 9, 2019, April 26, 2019, August 22, 2019, February 28, 2020, October 15, 2020, and November 19, 2020. Numerous Status Conference Hearings and Contempt/Special Hearings were held in addition to these hearings. On October 1, 2021, Plaintiff filed a Motion for Reconsideration. On October 14,

1

2021, Defendant filed a Motion for Reconsideration. On February 8, 2022, Oral Argument

was heard. As a result, the final order was amended regarding the payment plan on page

twenty-three and the requirement to purchase life insurance on page twenty-four.

## FINDINGS OF FACT

### A. General Stipulated Findings

1. The Plaintiff is Robert A. Hunt (hereinafter "Husband"). Husband was born in 1966 and was 49 years of age at the time of the hearing.

2. The Defendant is Penny Hunt (hereinafter "Wife"), Wife was born in 1959 and was 56 years of age at the time of the hearing.

3. The parties were married on June 17, 1996. This was the second marriage for Wife and the first marriage for Husband. Wife's first marriage ended in divorce.

4. The parties separated on May 12, 2012.

5. The parties were married for a period of approximately 15 years, 11 months.

6. The parties have no children together.

### B. Husband's Income and Potential to Earn

1. Husband currently pays $1796.38 in support payments. The support payments are set to expire as Husband has paid $98,793.12 out of the $105,421.22 owed to Wife.

2. Husband also pays $359.28 per month in arrears ("arears payments"). Husband owes over $100,000 in arears payments.

2

3. Husband is currently employed as an Independent Contractor/business analyst with Kodiak systems. He has worked with this company since 2017. Prior to his current employment, he was the President of CRA collections from 2007-2016, and he worked for UPS for 8 years. Husband also had several other business dealings which were depleted during the marriage.

4. Husband has an Associate's Degree in Business.

5. Husband's 2019 Kodak salary was $163,360.00. In 2018, Husband's Kodak salary was $170,136.96. *Trans.*, Feb. 28, 2020, at 201.[1] Husband's salary was consistently higher in prior few years.

6. Husband sought to lower his salary and hid assets. *See* Jan. 9, 2012 at 35-36.

7. Husband has received items such as $100,000 sports cars, a Ferrari worth $180,000, trips to Super Bowl on a private jet in lieu of a higher salary, and at least $100,000 as cash bonuses. *Id.* at 50-51; *see also* April 26, 2019 at 11-12.

8. Husband has monthly expenses of $10,312.00.

9. Husband has consistently lived at high standard of living and above his means despite separation.[2]

10. In accordance with the findings above, Husband's annual gross salary is at minimum above $200,000.

## C. Wife's Income and Potential to Earn

1. Wife is currently employed as a Commercial Underwriter at Farmers First Insurance Company where she has been employed for

---

[1] Testimony was provided that Husband received a Ferrari, other sports cars, cash bonuses, and other trips in lieu of salary. This indicates that his salary is probably higher than indicated.

[2] Sports cars, racing, expensive trips, and etc. *See Trans.* Oct. 15, 2020 at 133-37.

3

nine years.

2. Wife's 2019 salary was $70,047.00.

3. Wife has monthly expenses of $4,089.95.

4. Wife is currently in breast cancer remission and has fragile health.

5. Wife's annual gross salary is $72,721.44. *See* W's Ex. 170.

6. Prior to separation Wife consistently lived at a high standard of living.

7. Wife has been unable to sustain the prior standard of living and her medical expenses have greatly depleted her resources and her primary source of income.

8. At the time of the last hearing, Wife was receiving temporary support payments which is almost depleted.

9. In addition to support payments, Wife is currently owed over $100,000 in arears payments from Husband.

**D. Findings on Assigned Value to Items and Analysis of Marital vs. Nonmarital**

1. *Husband's UPS Retirement Fund:* Husband has a UPS Retirement Fund which was from employment during the marriage. The exact amount is unknown. The Court will QDRO this fund in the same percentage of equitable distribution generally.

2. *Wife had a 401K prior to marriage:* Husband coerced Wife into removing $33,000 in 2010 which resulted in the closure of the account, a penalty of losing funds, and future interest. *Trans.,* Feb. 28, 2020, at 21-22, 135-36; *see also Trans.,* Oct. 15, 2020 at 125-27. However, Husband did not use these funds to save the marital

4

home and as a result the marital home in Maryland was lost.

3. *Wife's Post-separation Retirement Account*: Wife does have a post-separation 401K. The Court does not need to value this given that it is nonmarital. However, the Court will note that this 401K amount is not significant because Wife started this account post-separation. *See Trans.*, Oct. 15, 2020 at 158-59. *See* W-174.

4. *Marital Home*: The home was sold for $410,000. *See* H-16. However, the Court recognizes that the value may have been higher and that due to the forced sale of the marital home to Husband, Wife may not have received the due value. Wife did provide an appraisal which valued the home at $475,000. In taking into consideration Husband receiving the home and the forced sale, the Court will value the marital home at $435,000 − $347,000 (mortgage) = $88,000.

5. *Wife's Jewelry*: Both parties agree that Wife had jewelry that was marital property. Husband valued Wife's jewelry as $6,750 and Wife valued it at $5,580. These values are fairly close and thus the Court will average the value to: $6,165.

6. *Husband's Jewelry*: Husband valued his jewelry at $2,750. Wife did not provide a specific number in her spreadsheet and the testimony was not specific enough except in the instance of a watch which is listed separately. Accordingly. The Court values Husband's jewelry at $2,750.

7. *Bitcoin*: This Court heard several hours of testimony from an expert only to conclude that this value cannot be ascertained to any degree of certainty. Therefore, this item is worth $0. *Trans.*, Oct. 15, 2020, at 26-27.

8. *Collectible Debts*: Husband is owed approximately $126,000 in debts during the marriage from various persons including: Ken

Baklor, Jason Wasserman, and Kevin Levrone. *See Trans.*, April 26, 2019 at 40. Accordingly, the debts are valued at $126,00.

9. *Paintings:*
   a. <u>Don Troiani, Lions of the Round Top Painting ("Gettysburg"):</u> There was some dispute as to whether this painting was a gift to Husband and therefore nonmarital or whether it was given in lieu of salary or debt and therefore was marital property. *See Trans.*, Oct. 15, 2020 at 166-67. The Court notes that throughout this case there was testimony by various parties that Husband received of cash bonuses, exotic cars, trips, and other lavish items in lieu of salary. Accordingly, this Court accepts Wife's testimony that this painting was owned by the parties prior to separation and is marital property rather than nonmarital. *Trans.*, April 26, 2019 at 208. Husband sold the painting for $25,000 without Wife's knowledge in 2013. *Trans.*, Feb. 28, 2020, at 181. However, this painting was appraised for a value at $40,000 and the Court accepts this value. *Trans.*, April 26, 2019 at 111-12.

   b. <u>Other Paintings:</u> The Court recognizes that there was some testimony regarding other Bivens' paintings or racing painting. However, the Court either did not hear sufficient testimony to set a value for these paintings or they were included on one or more nonmarital appraisals. The Court also believed that it was unclear whether some of the paintings were purchased prior to separation and if so which paintings were marital. Accordingly, the Court viewed these paintings as nonmarital of Husband or marital property with an unascertainable value. *See Trans.*, Jan. 9, 2019 at 44; *Trans.*, Nov. 19, 2020 at 25; *See* W-23 and W-24.

10. *Cars*
   a. <u>2001 Lotus Esprit:</u> This item was sold for a profit of $24,539.20 by the parties and split. *Trans.*, Feb. 28, 2020, at 43; H- Exhibit 12A. The Court recognizes that Wife presented some NADA guides that dispute this value, however, the values guides were

6

NADA 2017 and the date of separation was 2012. Accordingly, the Court can only accept the original value of $24, 539.20 which is now zero as the parties split the proceeds prior to this order.

b.  1991 Nissan Acura NSX: This item was valued at $39,500. *See Trans.* Oct. 15, 2015 at 66. There was some testimony regarding a mechanic lien. W's Exs. 206, 209. However, the Court believes that Husband did this without Wife's knowledge and that his actions was at the very least negligent if not intentional. Accordingly, this Court will accept the value of $39,500.

c.  2006 Audi S4: There appears to be some discrepancy over which vehicle the parties are referring to. Wife has listed two different vehicles that possibly qualify as a marital property while Husband only lists one as marital. It is clear that both parties agree that at least one of these vehicle is marital property but neither provided a value as of date separation. Wife provided two 2013 NADA values for over $20,000 while Husband previously listed the amount as $12,600 and now claims that the vehicle has no value as Husband gave this vehicle to another. The Court believes this was done without Wife's consent and it must be assigned some value. Accordingly, the Court will value this item at a median between Husband's original value and Wife's estimated value of $16, 300 minus Husband's value of $12,600 to account for the loan. Thus, the value is $3,700.

d.  BMW 745 I: This item was purchased by Husband in 2013 therefore this Court does need value this item and merely see it as evidence of Husband's continuance of living at a high standard of living. *See Trans.*, Jan. 9, 2019 at 55-58.

e.  2002 Ford Expedition: This item was purchased by Husband post-separation and therefore this Court does need value this item and merely see it as evidence of Husband's continuance of living at a high standard of living. *See Trans.*, Jan. 9, 2019 at 66-

7

68.

f.  2010 Jaguar: This item was also purchased by Husband after separation therefore this Court does not need value this item and merely see it as evidence of Husband's continuance of living at a high standard of living. *See Trans.*, Nov. 19, 2021 at 20-23.

g.  2004 Range Rover HSE: Both parties agree that there was 2004 Range Rover that was marital property. However, the value is disputed. Husband offered that it was valued at $15,000 but that he had turned it over to Kevin Levorne to make the loan payments. This apparently was done without Wife's consent or knowledge and therefore some value must be given. At the outset, Wife and Husband's values without loans were only approximately $2775 in difference. Husband offers that the loan balance was around $13,700. In order to provide some equity for Wife due to Husband's mismanagement of the vehicle without her consent, the Court will set the value to $2,000.

h.  2006 Mercedes SLK350: Both parties also agree that this vehicle was marital property. This item has been in Wife's possession since separation. There appears to be a dispute as to the loan amount at the date of separation and the value before the loan amount. Husband offers that the loan amount is $5,532 while Wife offers that the loan amount is $20,997. Wife offers that the value before the loan is $21,850.00 before the loan is applied and Husband offers that it is worth $16,350 before the loan is applied. However, neither offered specific exhibits relative to the loan. *See Trans.*, April 26, 2019 at 128. Accordingly, the Court will average both the loans discrepancies to $13,264.50 and the values before the loan to $19,100. Therefore the value of this item is $19,100 – 13,264.50 = $5,835.50.

i.  2006 BMW M5: The Court did not hear enough testimony nor was it presented with any proof of sale dating prior to separation. Accordingly, this Court merely assumes that this was either sold

8

prior to separation or purchased after separation. Therefore, this item has no value. *See Trans.*, Jan. 9, 2019 at 55-58.

j. 2010 Cadillac CTS: The Court did not hear any evidence that this vehicle was purchased prior to the date of separation and therefore this item is Husband's nonmarital that is either currently owed by Husband or was owned at some point following the parties' separation. *See Trans.*, Jan. 9, 2019 at 62.

k. 1984 Mustang: Husband purchased this in 2017 after the date of separation and therefore this Court does need value this item and merely see it as evidence of Husband's continuance of living at a high standard of living. *Id.* at 72-73.

l. 2008 Lexus I250: Both parties agree this is marital property or at the very least used marital funds to purchase this item. The item has already been sold for a profit of $1,000, (Sale Price: $15,000 – Loan: $14,000) however, the parties dispute the true value. *See Trans.*, April 26, 2019 at 194. Wife offers that the true value is $25,225 while Husband believes it to be $15,000. The Court recognizes that Wife presented a January 2013 NADA guide, which is a few months post-separation, accordingly, the Court accepts the value may be higher than Husband's value but not as high as Wife proposes. Accordingly, the Court will add $5,000 to the value for the vehicle making the value $6,000. Given that the previous amount $1,000 was split, the remaining balance is $5,000.

m. Chevrolet DS Truck: The Court believes that based on the little testimony that was provided that this truck purchased after the parties separation but likely was purchased with marital funds due to Husband requesting his girlfriend to purchase it with his money. *See Trans.*, Jan. 9, 2019 at 58-61. Accordingly, the Court will consider this marital property and value it at $10,000.

n. Mini Cooper: Husband bought this in 2016 and therefore this

9

Court does need to value this item and merely see it as evidence of Husband's continuance of living at a high standard of living. *See Trans.*, Jan. 9, 2019 at 63. Husband may have purchased more than one post-separation but this is unclear to Court and therefore irrelevant.

o.  2005 GMC Envoy, 2008 Jeep Grand Cherokee, and Denali: There was some testimony regarding vehicles that appear to be identified to some extent above. However, the record is not completely clear as to when these vehicles were purchased but in reviewing witnesses' testimony and the posts referenced, this Court can only reference a timeline after separation. *Id.* at 65-67. Therefore, this Court does need to value this item and merely see it as evidence of Husband's continuance of living at a high standard of living.

p.  Husband's Mercedes: There was some testimony presented that Husband purchased a Mercedes sometime between 2017 and 2018. *Id.* at 67-68. Accordingly, this is Husband's nonmarital and this Court does need to value this item and merely see it as evidence of Husband's continuance of living at a high standard of living.

q.  2003 Jetta: Husband purchased this in 2017. *See Trans.*, April 26, 2019 at 61-62. Accordingly, this is Husband's nonmarital and this Court does need to value this item and merely see it as evidence of Husband's continuance of living at a high standard of living.

r.  Other Cars: The Court recognizes that there may have been other vehicles that the parties attempted to reference. However, the parties did not identify them to a specificity that they could be valued and/or did not establish a timeline for the Court to account for. The Court notes that the bulk of such vehicles appear to be purchased by Husband post-separation and are only relevant to the extent that Husband has raised claims of

10

bankruptcy in lieu of a clearly proven lavish standard of living during the marriage and post-separation.

11. *Regal 2665 Boat:* Both parties agree that this is marital property but disagree as to the value. The Court notes that there is a $10,000 value difference before any loan. Accordingly, the Court will set the value before any loan amount to $20,000. Accordingly the value is $20,000 – $13,187 = $6,813.00.

12. *Motorcycle Trailer:* Both parties agree that this item is marital property. However, the parties disagree on the value by $3,500. Accordingly, the Court will average amount of Husband's value, $1,500, and Wife's value, $5,000, to $3,250.

13. *Motorcycles:*
    a. Chopper Motorcycle: Both parties agree that this was purchased during the marriage but do not agree whether it was merely stored or sold prior to separation. *See Trans.*, April 16, 2019 at 144-46. The Court notes that Husband was less than honest throughout the proceedings and even Husband previous paramour confirmed Wife's testimony that it was merely stored. *See Trans.*, Jan. 9, 2019 at 33-34. Accordingly, the Court will treat it as equitable marital property and value it at $10,000. *See* W's Ex. 222.

    b. 2003 Yamaha R1: The Parties agree that the motorcycle is marital property and that the motorcycle was sold for $22,000 and split by the parties prior to this order. *See Trans.*, Nov. 19, 2020 at 48; *see also* April 26, 2019 at 160. Accordingly, the Court accepts this and values it at $0.

    c. 1999 Kawasaki Drifter Motorcycle: Both parties agree this was marital property. This item had two appraisals values at $1,400 and $3,000. *Trans.*, Feb. 28, 2020, at 93. Accordingly, the Court averaged both appraisals and finds the value to be $2,200.

11

d. 1000R MV Agusta: This item was sold prior to separation therefore has no value. *See Trans.*, April 26, 2019 at 200.

e. BMW 745 I: This vehicle was purchased after separation therefore this Court does need to value this item and merely sees it as evidence of Husband's continuance of living at a high standard of living. *See Trans.*, April 26, 2019 at 67-68.

f. Ducati Motorcycle: There was some testimony regarding this item. However, there was no evidence that Court would ascertain to the certainty of the timeline of ownership of this item. Accordingly, this Court can only assume that if it was owned by Husband, it is nonmarital. *See Trans.*, April 26, 2019 at 46-47.

g. Harley Davidson V-Rod: This item was purchased by husband in 2017 and therefore this Court does need value this item and merely sees it as evidence of Husband's continuance of living at a high standard of living. *See Trans.*, Jan. 9, 2019 at 49.

h. 2007 Ninja Race Motorcycle: There was some testimony regarding a ninja motorcycle at the date of separation. However, it was offered that it was not fully operational. *See Trans.*, April 26, 2019 at 116-17. Accordingly, the Court will lower Wife's value from $6,355 to a value of $1,000. *See W's Ex. 235.*

i. Other motorcycles: The Court recognizes that there may have been other motorcycles referenced; however, the parties did not identify them to a specificity that they could be valued and/or did not establish a timeline for the Court to account for. The Court notes that the bulk of such vehicles appear to be purchased by Husband post-separation and are only relevant to the extent that Husband has raised claims of bankruptcy in lieu of a clearly proven lavish standard of living during the marriage and post-separation.

12

14. *Personal items in the Marital Home/Furnishing*: Husband presented a list of item in the House that were sold by the parties for a total of $1367.58. H's Ex. 17. The Court accepts this value as a set off except in the instance of items such as a Gettysburg painting, a president rolex watch, and pacman game for which wife or husband's girlfriend was able to provide specific testimony. The Court will note that there was significant testimony of Husband hidings items and that several items were likely not included in the appraisals. However, the Court cannot ascertain the true value or identity of said items and thus addresses this under the percentage for equitable distribution and alimony analysis.

15. *Watches:*
   a. Presidential Rolex Watch. The Court heard testimony regarding this watch and therefore values it at $2,500. *See Trans.*, Feb. 28, 2020 at 196-97.

   b. Some testimony was given about a Tissot, Raymond Weil, and Timex watch. However, the testimony was somewhat unclear therefore this Court cannot assign a value these items. *Id.*

16. *Wife's Pacman Game:* A pac-man game was on the list of Husband's original appraisal, however, it was not present when the Court ordered Husband to cooperate with a second appraisal of household items. Accordingly, the Court views this as evidence of a willful dissipation of Wife's nonmarital assets and accepts Wife's testimony as to the value of the Pacman machine. There was testimony given regarding the Pacman game value ranging from $600-$2200 and that Husband gifted this item to Wife. *See Trans.*, Nov. 19, 2021 at 37-39. Thus, Court assigns a value of $1,000 and if Husband cannot produce the physical item, he will need to reimburse Wife for it.

17. *Husband's Escrow Personal Injury Settlement:* The value of this settlement is just over $50,000. This is nonmarital of Husband. *Trans.*, Feb. 28, 2020 at 34.

13

18. *Coin Collection and Gold and Silver:* There was no specific testimony on the value of this and the bulk of the testimony on these items were vague. *See Trans.*, Oct. 15, 2020 at 163-64. Thus, the Court cannot assign a value.

19. *Guns*: There was no specific testimony on the value of this item and the bulk of the testimony on these items were vague. Thus, the Court cannot assign a value. *Trans.*, Oct. 15, 2020 at 168.

20. *Exercise Equipment*: There was some evidence that the marital exercise equipment was valued at $300. *See* H's Ex. 20. The Court did not hear any convincing testimony to the contrary and therefore accepts this value.

21. *Business Assets*: Back in 2017, this Court heard testimony of Husband's numerous business dealing with various companies. However, with the exception of some of the CRA accounts the Court is unable to ascertain a value to these assets and can only view this conduct as evidence of Husband's dissipation of marital assets. *See Trans.*, Oct. 12, 2017 at 27-28, 41, 50.

22. *Supposal Support Arears owed to Wife:* There are arears payments owed by Husband to Wife post-separation. Therefore, the arears payments are considered nonmarital. The Court notes that it heard testimony that the arears payments are over $100,000. *See Trans.*, Nov. 19, 2020 at 39.

23. *CRA Accounts*: The Court reviewed Wife's exhibits relative to the CRA account ending in 6461. The Court notes that on May 11, 2012, which was the day before separation, the balance was $19,990.13. The next ledger balance was on May 14, 2012. Accordingly, the Court accepts the marital value for the CRA Accounts to be $19,990.13. *See* W's Ex. 5.

24. *Husband and Wife's Accounts:* The Court heard some testimony

14

about various accounts of Wife and Husband. However, the bulk of these accounts that appear to contain any significant amount of assets appear to be dated post-separation and therefore do not require the Court to assign a value. Accordingly, the Court will not assign any particular value to these accounts and will consider them to be nonmarital of the parties unless specified below. Other accounts are extremely nominal and have outside parties on these accounts and therefore do not largely affect distribution. *See* W's Exs. 1-3, 8-11.

a. Husband's Account ending in 0865: Between May 4th and May 18th of 2012 the balance remained $10,024.18. See W's Ex. 6. The Court notes that there appears to be another individual's name who is not Wife on this account. Accordingly the Court will value the cash amount at $5,012.09.

b. Husband's and Wife's Joint Account ending in 6075: The day before separation, May 11, 2021, there was $6,184.91 in the joint account. The balance did not change until May 14, 2012. *See* W's Ex. 7. Accordingly, the value is $6,184.91.

c. Wife's Account ending in 8377: The parties agree about the amount in the checking account at date of separation was roughly around $3,400. There was testimony that $3,000 of this money was given by Husband to Wife as part of her share for a sale of a truck and therefore we will subtract this amount and the Court will value it at $400.

## E. Marital Property

1. Husband's UPS Retirement Fund: QDRO 30% to Husband 70% to Wife.

2. Marital Home ("Camelot"): $88,000

15

3. Wife's Jewelry: $6,165

4. Husband's Jewelry: $2,750

5. Bitcoin: $0

6. Gettysburg Painting: $40,000

7. 2001 Lotus Esprit: $0

8. 1991 Nissan Acura NSX: $39,500

9. 2006 Audi S4: $3,700.

10. 2004 Range Rover HSE: $2,000

11. 2006 Mercedes SLK350: $5,835.50

12. 2008 Lexus I250: $5,000

13. Chevrolet DS Truck: $10,000

14. Regal 2665 Boat: $6,813.00

15. Motorcycle Trailer: $3,250

16. Chopper Motorcycle: $10,000

17. 2003 Yamaha RI: $0

18. 2007 Ninja Race Motorcycle: $1,000

19. Personal items in the Marital Home/Furnishing: $1367.58

20. Presidential Rolex Watch: $2,500

21. Exercise Equipment: $300

22. CRA Accounts: $19,990.13

23. Husband's Account ending in 0865: $5,012.09

24. Husband's and Wife's Joint Account ending in 6075: $6,184.91

25. Wife's Account ending in 8377: $400

## F. Nonmarital

1. Husband's Personal Injury Escrow fund

2. Support Arears Payments owed to Wife

3. Wife's Post-separation 401K

4. Husband's various vehicles listed as post-separation vehicles above including motorcycles, a Ferrari, and other cars.

5. Wife's Pacman Machine. Husband will need to return the machine or reimburse Wife for a $1,000.

## G. Equitable Distribution

Section 3502(a) of the Divorce Code lists eleven factors that must be considered in any recommendation for equitable distribution. Notably, "there is no simple formula by which to divide marital property." *Smith v. Smith*, 653 A.2d 1259, 1264 (1995). Rather, each case is evaluated by a case by case basis. *Id.* While "the list of factors of section 3502(a) serve as a guideline for consideration, the list is neither exhaustive nor specific as

to the weight to be given the various factors." *Id.* The Court applied the eleven equitable distribution factors listed in Section 3502(a) of the Divorce Code to this case as follows:

**Length of marriage.** The parties were married for a period of approximately 15 years, 11 months. This factor along with others support a larger portion for Wife.

**Prior marriages.** This was the first marriage for Husband and the second marriage for Wife. This factor did not affect the distribution as Wife is not receiving any sort of property or monies from her prior marriage.

**Age, health, etc.** Husband is 49 and is in generally good health while Wife is 56 and is in breast cancer remission. Husband will likely be able to continue to work for a significant amount of time. While Wife's age would normally not impede her ability to work, her health is compromised as she is in breast cancer remission. Husband will be earning at minimum over twice as much Wife after the divorce is finalized. Husband's income appears to fluxgate upwards and what is not reflected in his paystubs is apparent through multiple sport cars ranging from $50,000 to 190,000 each, expensive trips, hefty cash bonus, and etc. Given the disparity in income, this factor is a significant indication that Wife should receive a larger portion of equitable distribution.

**Contribution to education, training, etc.** There was very little testimony on this factor and therefore this factor is neutral.

18

**Opportunity for future acquisitions.** Neither party appears to have any significant opportunity for the acquisition of capital assets in the future outside employment. Wife's lack of higher education and overall health will likely prevent her from obtaining any future acquisitions. However, Husband will be in a better position to acquire capital assets given the parties' income disparity. This factor favors a larger share for Wife.

**Sources of income other than employment.** Wife does not have other sources of income other than employment and the previous support that she was getting from Husband is almost gone. The Court will not include arrears as a source of income as the arrears are a penalty due to Husband's actions. Husband sources of income vary. There was a lot of testimony that Husband received sport cars, expensive trips, cash bonuses, and other expensive items in lieu of salary. Thus, this factor favors a larger share for Wife.

**Contribution or dissipation of property.** Wife provided ample testimony relative to Husband taking out liens on nonmarital without her knowledge, coercing her to giving him her pre-marital retirement funds under the ruse that she was saving their marital home, hiding marital funds and property including furnishings, and other business ventures utilizing marital funds that were run into the ground by Husband's mismanagement. The Court did not find Husband's defenses to be credible and therefore, this factor favors a

19

larger share for Wife.

**Value of property set apart to each party.** While on its face it appears that the parties have several items of value, much of the property is not physically intact due to Husband's dealings with the property. Notably, the parties have a marital home, several vehicles and motorcycles, a valuable painting, Husband's UPS pension, and some other miscellaneous items. Much of the property including the marital home is in Husband's physical possession and thus, this factor favors a larger share for Wife.

**Standard of living established during the marriage.** There was extensive testimony relative to the high standard of living that the parties lived at during the marriage. Testimony supported that both Wife and Husband lived well above their means. Specifically, Husband and Wife had many of expensive automobiles, motorcycles, boats, paintings, guns and coin collections, and other luxury items. Additionally, the parties took many international luxury trips, attended racing events, super bowls, and etc. Further, the parties hosted lavish events and regularly purchased expensive outerwear as well as various gadgets. Husband has demonstrated that he is able to maintain such a lifestyle even after almost ten years of separation despite his claims of bankruptcy. However, Wife has not been able to maintain a lifestyle even close to the standard of living during her marriage. Given Wife's health, education, and age, she is unlikely to achieve such a standard of living

20

remotely equivalent on her own means. Therefore, this factor significantly favors a larger share for Wife.

**Economic circumstances, including tax ramifications.** The exchange of assets will likely be in some form of payment to Wife starting with funds in escrow given that most of property is in Husband's possession. Husband has also received many sources of income have not been claimed on taxes and thus any ramifications which he may incur are at his own making. *See Trans.*, Oct. 15, 2020 at 89. Additionally, neither party produced any tax experts on this matter. Thus, this Court will not offer any further analysis on this factor. This factor by itself does not affect this Court's analysis.

**Custody of minor children.** The parties have no minor children. Therefore, this is not a factor.

| Asset | Husband | Wife | Value |
|---|---|---|---|
| UPS Retirement Fund | | | QDRO |
| Marital Home | $ 88,000 | | $88,000 |
| Wife's Jewelry | | $6,165 | $6,165 |
| Husband's Jewelry | $2,750 | | $2,750 |
| Bitcoin | $0 | | $0 |
| Gettysburg Painting | 40,000 | | 40,000 |

| | | | |
|---|---|---|---|
| 2001 Lotus Esprit | | | $0 |
| 1991 Nissan Acura NSX | $39,500 | | $39,500 |
| 2006 Audi S4 | $3,700 | | $3,700 |
| 2004 Range Rover HSE | $2,000 | | $2,000 |
| 2006 Mercedes SLK350 | | $5,835.50 | $5,835.50 |
| 2008 Lexus I250 | $5,000 | | $5,000 |
| Chevrolet DS Truck | $10,000 | | $10,000 |
| Regal 2665 Boat | $6,813.00 | | $6,813.00 |
| Motorcycle Trailer | $3,250 | | $3,250 |
| Chopper Motorcycle | $10,000 | | $10,000 |
| 2003 Yamaha R1 | | | $0 |
| 2007 Ninja Race Motorcycle | $1,000 | | $1,000 |
| Personal items in the Marital Home/Furnishing | | | $1367.58 |
| Presidential Rolex Watch | $2,500 | | $2,500 |
| Exercise Equipment | $300 | | $300 |
| CRA Accounts | $19,990.13 | | $19,990.13 |
| Husband's Account ending in 0865 | $5,012.09 | | $5,012.09 |

| | | | |
|---|---|---|---|
| Joint Account ending in 6075 | $6,184.91 | | $6,184.91 |
| Wife's Account ending in 8377 | | $400 | $400 |
| **Distribution Percentage** | $77,810.46 (30%) | $181,557.75 (70%) | $259,368.21 |
| **Assets Held Total** | $246,967.71 | - $12,400.50 | |
| **Remaining Owed** | -169,157.25 | 169,157.25 | |

For the reasons set above, the net marital property should be distributed 30% to Husband and 70% to Wife. Additionally, Husband's 401K from UPS is to be QDRO 30% to Husband and 70% to Wife. The Court notes that this percentage allotment is not much higher than Husband proposed on his final spreadsheet and purported to Wife's requested finding relative to Wife receiving the majority of the distribution. This spreadsheet covers the marital assets and which party physically has the property or contributed to the item being sold or dissipated the value. Given that the bulk of the marital assets are either in Husband's possession or were dissipated by Husband's actions, the remaining amount owed to Wife is to paid first from Husband's personal injury escrow funds and escrow funds relative to the sale of the marital home or furnishing items in the marital home.

These monies must be released from escrow to Wife's counsel within ten days of this order. Husband is also required to take reasonable efforts to collect debts owed which are listed above. Husband will pay $88,453.02 remaining after escrow distribution to wife

23

at $640.00 per month with 6% interest until this amount is paid in full. Husband is also ordered to produce Wife's Pac-man game to Wife or reimburse Wife in the amount of $1000 within ten days of this order. As this item is not marital property, Husband may not subtract this amount from the escrow funds referenced above. This Court warns Husband that it will view any unreasonable efforts and delays as an action for contempt of court.

### H. Support Arrears Owed to Wife.

Husband currently owes over a $100,000 in support arrears to Wife, given that Husband has been less than honest with the discovery of marital property and dissipated other assets. Therefore, the Court orders Husband to take out a life insurance policy of a minimum of $100,000 which names Wife as the sole beneficiary. Husband is to submit to Wife's counsel a receipt and documents of said insurance policy within sixty days of this order. As the support arrears decrease, the minimum life insurance policy may decrease pro rata.

### I. Alimony

A Court may award alimony as a secondary remedy where *economic justice* and the reasonable needs of a party cannot be achieved by way of an equitable distribution scheme, i.e. a remedy based upon the 'reasonable' needs of the party seeking alimony as well as the payor's ability to pay. *Teodorski v. Teodorski*, 857 A.2d 194 2000 (Pa. Super.

24

Ct. 2004) (emphasis added). Alimony is to be awarded only when and if the trial court finds that it is necessary to provide the receiving spouse with sufficient income to obtain the necessities of life. *Id.* The necessities are in party based upon the standard of living during the marriage. While "the purpose of alimony is not to reward one party and punish the other, but to ensure that the reasonable needs of the person who is unable to support herself through appropriate employment are met." *Miller v. Miller*, 744 A.2d 778 (Pa. Super. 1999). These principles will be discussed further as part and parcel to totality of the seventeen factors for alimony under Section 3701(b) of the Divorce Code, and, as applicable to the specific facts of this case.

**Relative earnings and earning capacities.** As noted above, Husband will be earning at minimum over twice as much Wife after the divorce is finalized. Husband's income appears to fluxgate upwards and what is not reflected in his paystubs is apparent through multiple sport cars ranging from $50,000 to $190,000 each, expensive trips, hefty cash bonus, and etc. Given the disparity in income, this factor is significant and favors an award of alimony.

While Wife currently has the ability to work, Wife is in remission with breast cancer. Given Wife's health and age, her earning capacity is not stable.

**Ages and conditions of the parties.** As earlier indicated, Husband is forty-nine

25

and is in generally good health while Wife is fifty-six and is in breast cancer remission. Husband will likely be able to continue to work for a significant amount of time. While Wife's age would normally not impede her ability to work, her health is compromised as she is breast cancer remission. Thus, this factor support an award of alimony.

**Sources of income for both parties.** Husband's income appears to be steady and any instability relative to Husband's employment appears to be intentional by Husband. As noted previously, Husband also receives expensive items and cash bonuses in lieu of salary. Wife is currently working full-time and has been for close to ten years. However, her health could compromise this source of income. Husband attempts to claim that alimony is not needed because the arears payments are significant. However, this Court would note that the arears payments are a penalty for Husband's failure to pay support already owed or delayed. Therefore, it is improper for this Court to reward Husband for his actions and to penalize for Wife by counting the arears payments as a source of income. Accordingly, for the reasons listed in the previous factors, this factor also support an award of alimony.

**Expectancies and inheritances.** Neither party testified that they are expecting inheritances. Accordingly, this factor is neutral.

**Duration of the marriage.** The parties were married for a period of approximately 15 years, 11 months. Husband has been paying roughly $1800 since May 2018 through the

26

Domestic Relations Office. This will factor into the duration and Husband's ability to pay paired with the standard of living during this marriage. However, otherwise this factor is neutral.

**Contribution to training, etc.** There was no significant testimony regarding this factor and it not a factor for consideration.

**Custody of minor children.** The parties have no minor children together. Therefore, this is not a factor.

**Standard of living during the marriage.** There was extensive testimony relative to the high standard of living that the parties lived at during the marriage. Testimony supported that both Wife and Husband lived well above their means. Specifically, Husband and Wife had many of expensive automobiles, motorcycles, boats, paintings, guns collections, and other luxury items. Additionally, the parties took many international luxury trips, attended racing events, super bowls, and etc. Further, the parties hosted lavish events and regularly purchased expensive outerwear as well as various gadgets. Husband has demonstrated that he is able to maintain such a lifestyle even after almost ten years of separation. However, Wife has not been able to maintain a lifestyle even close to the standard during her marriage. The Court notes that even an award of alimony merely boosts her standard of living but still does equate Wife's standard of living to that what she was

27

accustomed to during the marriage. Moreover, given Wife's health, education, and age, she is unlikely to achieve a standard remotely similar on her own means. Accordingly, this factor heavily supports an award of alimony.

**Relative education and training.** Husband has an Associate Degree. Wife has no higher education. Given the disparity in their incomes, this factor slightly favors an award of alimony.

**Relative Assets and Liabilities.** Both parties have retirement accounts although only Husband's account is marital. Husband has numerous debts owed that may be collectable. Husband also has several vehicles some which are worth sizable amounts. Husband also has the marital home. Outside of one vehicle, her retirement account, and jewelry. Wife does not have any major assets. Accordingly, this factor supports an award of alimony.

**Property brought to the marriage.** Wife had a 401K prior to marriage. However, the Court heard testimony that Husband coerced Wife to withdraw $33,000 to save the Maryland marital residence. Wife testified that Husband did not use this money for the marital home and as consequence they lost Maryland marital home as an asset and Wife lost $33,000 of her retirement funds plus all of the monies which she was penalized for withdrawing early and any future interest. Husband does have a bankruptcy action pending

28

but given the testimony of Husband's continuous high stand of living, this does not affect this factor. Accordingly, this factor supports an award of alimony.

**Contribution as a homemaker.** Wife testified to being primarily responsible for household duties, chores, and hosting events for Husband. *See Trans.* Oct. 15, 2020 at 130-32. No other testimony was given relative to this factor. Accordingly, this factor slightly supports an award of alimony.

**Relative needs of the parties.** Wife's delicate health and age which have been discussed above are particularly relevant to this factor. Additionally, it is also pertinent that this Court previously found that Husband had the ability to pay $1796.38 a month. While Wife will receive some assets through equitable distribution, some of the assets may not be collected due to Husband's bankruptcy action and Husband's mishandling of property and financial matters. Moreover, Wife testified to begin unable to afford better lodging without additional support. It is notable that Wife's standard of living changed drastically upon separation while Husband's remained relatively the same. Wife also has ample medical bills that hamper her ability to support a relatively comparable standard of living. Accordingly, this factor supports an award of alimony.

**Marital misconduct.** There was testimony of marital misconduct relative to Husband's affairs and Husband's misuse of finances and property. This Court notes

29

Husband was less than forthcoming and his lack cooperation in the early proceedings contributed to delays and the depletion of some assets in relative to furnishings in the marital home, other vehicles, and cash. Said actions thus deprived Wife of monies/property that she could claim in equitable distribution. Thus, this factor supports an award of alimony.

**Federal, state, and local tax ramifications.** Given the recent tax changes, alimony is no longer deductible for the paying spouse, nor is it income for the receiving spouse. This is significant. Husband will have to bear the burden of alimony in this case without the ability to deduct those costs on his federal taxes, but given the relative needs of Wife, any alimony award shall be manageable by Husband given his income. This factor by itself does not support an award for alimony.

**Lacking of sufficient property.** As noted above, outside of Wife's retirement funds and her vehicle, Wife has no property. Meanwhile, Husband has numerous sources of income, property, and the marital home. Thus, this factor supports an award of alimony.

**Capability for support through employment.** This factor has been discussed at length in previous factors and is applicable here as well. This factor favors an award of alimony.

For the reasons set forth above and despite Wife receiving 70% of the marital estate,

Wife is still in a position in which she needs additional support to maintain her monthly expenses. This Court notes that factors on marital misconduct, the standard of living during the marriage, earnings/capacities to earning, and health of the parties are particularly relevant in this case largely persuaded this Court to award alimony for Wife. This Court has determined that Wife will likely be unable to meet her reasonable needs indefinitely.

This Court's reasoning for decision is three fold: First, Wife's health is poor and as such she unable to pursue additional training or an increased workload. Second, Husband's mishandling of many marital assets have resulted in debts or losses of assets in their entirety so that Wife is unable to otherwise retrieve equitable assets from said property. Third, Husband cost Wife a significant amount of her retirement fund resulting in her having to start over with a new retirement fund. These reasons are certainly not exhaustive but this Court believes that they do provide ample support for this decision. The Court will opine that it does not view its decision as a penalty for Husband but as provision for the economic justice owed to Wife for the numerous instances that this Court could not grant a distribution of assets for depleted marital assets due to Husband's conduct. Moreover, this Court basis its award on the previously calculated Domestic Relations Support of May 2018. Accordingly, this Court determines that Husband shall continue pay $1796.38 a month permanently commencing with the finalization of the divorce. This award will be

31

subject to review for the statutory reasons including a change in circumstances.

### J. Attorney's Fees

Under § 2503(3) of the Divorce Code, any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter. 42 PA.C.S. §2503(7). Wife argues that she is entitled to attorney's fees due to Husband's uncooperativeness during the discovery process and Husband repeated attempts to hide assets and monies from this Court. This Honorable Court is inclined to agree with Wife except for two factors.

First, this Court in already held Husband in contempt and ordered Husband to reimburse Wife for attorney's fees and appraisals of property. Second, this Court believes that Wife was not entirely prudent in the procuring of experts and other preparation expenses. Namely, some of Wife's expert's testimony took a significant amount of time only to provide an inconclusive value of alleged property. Other experts were produced to value items that were in fact Husband's personal property not marital property and thus were of little relevance to this proceeding. Additionally, this Court believes that many of Wife's claims relative to Husband's vexatious behavior stem prior to this Court's issuance of contempt against Husband and thus are merely repetitious. Furthermore, others actions by Husband are better addressed in this Court's findings relative to equitable distribution

32

and alimony for depletion of marital assets. Accordingly, this Court denies Wife's request for attorney's fees.

This matter is now ripe for divorce.

BY THE COURT,

Date: **February 8, 2022**

N. CHRISTOPHER MENGES, JUDGE

**The Prothonotary is directed to serve a copy of this order upon Counsel and Parties as required by law.**

33